## NICKLES *v.* UNITED STATES.

*(Circuit Court, E. D. Missouri, E. D.* May 24, 1890.)

LIMITATION OF ACTIONS—WHEN STATUTE BEGINS TO RUN.

The statute of limitations begins to run against the right of the purchaser of personal property to sue for breach of warranty of title from the time that his title is declared invalid by the court of last resort, and not from the time the mandate of such court is filed in the lower court.

At Law.

This is an action against the government under the act of March 3, 1887, (24 U. S. St. 505,) and it has been submitted for decision on an agreed statement of facts, which obviates the necessity of any special findings, as would otherwise be required by the seventh section of the act. For a proper understanding of the case, it will suffice to say that the agreed statement shows, in substance, that on September 4, 1876, Oliver A. Patton and V. M. C. Silva, who were at the time respectively register and receiver of the United States land-office for the district of Utah, seized certain lumber for and in behalf of the United States, and advertised it for sale as government property which they had the right, as agents for the government, to so seize, advertise, and sell. In point of fact they had no right to seize the lumber in question, as it was at the time private property, belonging to one Daniel H. Wells. On September 16, 1876, Wells brought a suit in replevin for the property, and, under the writ issued in that case, it was restored to his (Wells') possession on the 25th of the same month. Three days thereafter, September 28, 1876, Patton and Silva sold the property pursuant to advertisement, though it was then in Wells' possession, and the plaintiff in this case, John Nickles, became the purchaser at the price of $1,016, which he then and there paid to the agents of the government. At the time of the purchase Nickles knew that Wells claimed to be the absolute owner of the property, but he did not know the manner in which he had acquired title to the same, if that is at all material. Not being able to otherwise obtain possession of the lumber, Nickles, on October 7, 1876, brought a suit in replevin against Wells in the territorial court of Utah. He succeeded in that court in obtaining a judgment against Wells for the value of the lumber, but does not appear to have obtained or had the actual possession of the same at any time after his purchase. Wells appealed from the judgment so rendered against him to the supreme court of the United States, where the judgment of the territorial court in Nickles' favor was reversed and annulled on January 16, 1882. *Vide* 104 U. S. 444. It is sufficient to say that the decision of the supreme court of the United States in *Wells* v. *Nickles* conclusively determined that Wells was the owner of the property in controversy at the time of the sale by Patton and Silva, and that Nickles acquired no title by virtue of that sale. Though this decision was promulgated on January 16, 1882, the mandate does not appear to have been filed in the territorial court until January 29, 1884. The present

suit was begun by Nickles on January 22, 1890, and there is a plea of the statute of limitations by the United States.

*Harmon J. Bliss*, for plaintiff.

*Geo. D. Reynolds*, U. S. Dist. Atty., for defendant.

THAYER, J., (*after stating the facts as above.*) Plaintiff predicates his right to recover on the ground that a warranty of title by the United States is to be implied from the sale made by Messrs. Patton and Silva of the lumber in question on the 28th of September, 1876. But even conceding, though without deciding, that the law will imply a warranty of title when the United States, through its agents, sells property in its possession as its own, and for its full or fair value, yet in this case there is one circumstance that renders it doubtful, to say the least, whether the law would imply a warranty on the part of the government. Messrs. Patton and Silva undertook, as it seems, to sell personal property that was neither actually nor constructively in their possession, or in the possession of any agent or officer of the United States, when the sale was made; and Nickles knew at the time of his purchase that Wells, who was then in possession of the property, claimed to be the owner by title adverse to the United States. It may well be doubted whether the law would imply a warranty under such circumstances, though the purchase price was accepted, and covered into the treasury of the United States. I find it unnecessary, however, to decide that question, and would not be understood as expressing any opinion thereon, as, according to the view I have taken, the statute of limitations is a complete bar to the suit.

The first section of the act of March 3, 1887, provides "that no suit against the government  *  *  *  shall be allowed under this act, unless the same shall have been brought within six years after the right accrued for which the claim is made." Admitting the general rule to be that, where personal property is sold with an implied warranty of title, and possession is delivered by the vendor, an action for a breach of the warranty will not lie until the vendee has been ousted of possession by a paramount title, or until something equivalent to an ouster has occurred, (2 Benj. Sales, Amer. Notes, 829, 830,) yet in the present case the vendor did not deliver possession to the vendee. Wells was in possession at the time of the sale, according to the agreed statement, and refused to surrender possession when Nickles made demand for the lumber on or about October 7, 1876. Assuming that the sale in question was with an implied warranty of title by the United States, it is the opinion of the court that such warranty was broken, so as to give a right of action, when Wells refused to recognize Nickles' title and right of possession; that is to say, as early as October 7, 1876. But even if that view is erroneous, and it be true, as contended, that Nickles could not maintain an action for a breach of warranty, until he had instituted legal proceedings against Wells to recover possession of the property, and had been defeated, yet it appears that he was so defeated by the decision of the supreme court of the United States on the 16th of January, 1882,

more than eight years before this suit was filed. From that time, at least, Nickles had a right of action for breach of warranty, if he ever had. I can attach no importance to the fact that the mandate was not filed in the territorial court until January 29, 1884. The agreed statement concedes that the decision of the supreme court was of such character as to extinguish Nickles' title, and such was obviously the effect of that decision, which has been made a part of the agreed case. Nickles had the right to abandon the further prosecution of the suit against Wells, if it was ever incumbent on him to bring such a suit, as soon as the judgment of the supreme court was announced. The statute of limitations in my judgment began to run against him certainly from the time his title to the property was pronounced worthless by the court of last resort, and its operation was not stayed merely by delay in sending down the mandate. If, as the plaintiff claims, he was not informed at the time of his purchase of the stipulation entered into on July 10, 1875, between Patton and Wells, the former acting as agent for the United States, by virtue of which, as the supreme court of the United States holds, Wells acquired a good title to the lumber in dispute, then it would seem that a moral obligation rests on the government to refund the purchase money, which congress might properly recognize.

For reasons stated, however, the demand is not a legal claim against the United States which the courts can now enforce. Judgment for defendant.